EXHIBIT B

# EMPLOYMENT AGREEMENT

**Employer:** Kargo Global, Inc., a Delaware corporation (the "***Company***") with its principal place of business at 36 East 12th Street, Sixth Floor, New York, NY 10003.

**Employee:** Alexis Erin Berger ("***Employee*** *or* ***You***"), residing at: 21 East Huron, Apt. 2101, Chicago, I.L. 60611

**Position:** Vice Presidents Sales, Midwest Territory

**Commencement Date:** August 21, 2012

**Compensation:** $235,000 base salary per annum plus Qualified Commissions (as described below);

## TERMS AND CONDITIONS

This Employment Agreement ("***Agreement***"), made as of the Commencement Date set forth above (the "***Commencement Date***") is entered into by Company and Employee.

**WHEREAS**, Company wants to employ Employee, and Employee desires to be employed by Company.

**WHEREAS**, this Agreement supersedes and terminates any and all prior or contemporaneous written and oral agreements between Company and Employee, except for the Nondisclosure/Noncompete/Inventions Agreement dated August 21, 2012 between Company and Employee (the "***Inventions Agreement***"), which agreement is hereby confirmed as continuing in full force and effect.

In consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**1.** **Employment** Company agrees to employ Employee and Employee hereby accepts employment at least through December 31, 2012, subject to the terms and conditions set forth herein and at the Company's absolute discretion.

**2.** **Term of Employment** The term of Employee's employment hereunder shall commence on the Commencement Date and continue on an "at will" basis until terminated by Employer or Employee at any time (such term being referred to herein as the "***Employment Period***").

**3.** **Position and Capacity** Employee shall serve in the capacity of Vice President Sales, Midwest Territory. The "Midwest Territory" shall consist of the following states: Illinois, Indiana, Michigan, Texas, Minnesota, Wisconsin, Ohio, and Missouri. The Company may reasona-

BERGER 0001

bly amend the Midwest Territory upon notice to Employee. Company, in its sole discretion, may change, amend or alter Employee's position, duties and/or work location from time-to-time as it deems appropriate; however, Company shall not relocate Employee outside of Illinois without Employee's consent. Employee accepts such employment and agrees to undertake the duties and responsibilities inherent in such position and such other duties and responsibilities as the Chief Executive Officer or other officer of the Company, or his or her designee, shall from time-to-time assign to Employee. Employees responsibilities may include but are not limited to building a sales and account management team and directly bring in sales from new relationships as well as existing Kargo relationships in the Midwest Territory and achieving the sales goals for the Midwest Territory determined by the Company in its reasonable discretion. Employee shall devote his/her entire business time, attention and energies to the business and interests of Company during the Employment Period. At no time during the Employment Period will Employee render commercial or professional services of any nature to any person or organization, whether or not for compensation, without the prior written consent of such Chief Executive Officer. Employee shall abide by the rules, regulations, instructions, personnel practices and policies of Company, including Company's Employee Handbook, as may be adopted by Company, and any changes thereto which may be adopted from time-to-time by Company.

## 4.     Compensation and Benefits

   **4.1     Compensation** Company shall compensate Employee pursuant to the terms stated in this Section 4.1, to be paid in accordance with Company's then-current payroll practices commencing on the Commencement Date and continuing for the duration of the Employment Period, prorated for any partial compensation period. Employee shall be eligible for compensation increases at the discretion of Company.

   You will receive an annual base salary of $235,000, plus Qualified Commissions (as defined below). Your first opportunity for a review of your annual base salary will be October 1, 2013. In addition to your annual salary, You will be entitled to receive Qualified Commissions on business sold by You and your sales team in the Midwest that directly report to You and closed by the Company, provided that no commission or other compensation shall be payable (i) unless such commission or compensation is expressly approved in advance in writing by one of the following individuals: Harry Kargman or Kevin Canty, (ii) for additional revenue based on revised terms and conditions that are subsequently negotiated or renegotiated, as evidenced by a written document, an amendment, or supplement to an existing agreement and in which You did not participate in such revision or renegotiation thereby earning Qualified Commissions.

   "Qualified Commissions" shall mean commissions based upon Company sales as approved by the Company based upon the following commission structure: (a) eight percent (8%) of Net Revenue received by the Company during the applicable Royalty Period for business that You source yourself or is sourced by your sales team in the Midwest Territory who directly report to You as is determined by the Company in its reasonable discretion. In addition, You shall receive an additional two percent (2%) of Net Revenue for any calendar quarter (comprising of three consecutive Royalty Periods) in which You or your sales team in the Midwest Territory who directly report to You generate the greater of: 1) $1,500,000 in gross commissionable sales for such calendar quarterly period that are collected by the Company subject to the terms of Section 5 below or 2) 150% of the sales goal as set by the Company in its reasonable discretion for

30533689
Kargo Global, Inc.

Confidential & Proprietary

**BERGER 0002**

such period that are collected by the Company subject to the terms of Section 5 below, all as is determined by the Company in its discretion. For purposes of this Agreement, "Net Revenues" shall mean all revenue actually received by the Company under the applicable business agreements less (i) all taxes, duties and any other amounts required to be paid to any taxing or other governmental authority other than the Company's income taxes; or (ii) third party or customer costs, including revenues shares, royalties, commissions, fees, refunds, rebates or credits that are required to be paid by the Company with respect to such revenues. For purposes of this Agreement, "Royalty Period" shall mean any calendar month in which Kargo receives a payment in connection with a commissionable business transaction referenced above provided that the Employee is still employed by the Company. Except as expressly set forth in Section 5 below with respect to voluntary termination of employment with at least one month's prior notice to the Company, in no event will Employee receive any Qualified Commissions based on revenues received after Employee is no longer retained by the Company.

Employee will receive all Qualified Commissions to which Employee is entitled within thirty (30) days after receipt of the applicable revenues by the Company and paid according to the regular payroll practices of the Company.

**4.2    Retention Bonus** Employee shall be eligible an annual retention bonus based upon personal and company wide performance. This bonus is guaranteed so long as You are an employee of the Company at the end of a fiscal year, December 31st, and will be pro-rated based upon the amount of time you were employed at the Company. The annual bonus, based upon a full year of employment, will be between 10%-20% of your base salary, but no less than twenty thousand dollars ($20,000) pro-rated on an annualized basis, with the exact percentage based upon both individual and company-wide goals at the sole discretion of the Company. Individual goals will include such tangible and intangible factors such as close rate on RFP's, innovation, professionalism, attitude, contribution to the team, adherence to deadlines, punctuality, leadership, commitment, ideation, going the extra miles, interactions with other Kargo employees and assisting them in their jobs, dedication, flexibility in work schedule to meet the Company needs, training others, and integrity. With regard to company-wide goals, the Company will set monthly, quarterly and annual goals and You will participate in any company-wide bonuses that are generally provided upon reaching certain goals.

**4.3    Benefits** Employee shall be eligible to participate in all benefit programs, including standard medical and dental insurance that Company makes available to its employees to the extent that Employee's position, tenure, salary, age, health and other qualifications make him/her eligible to participate. Company may discontinue, amend or alter such employee benefit programs at any time and from time to time as Company, in its sole discretion, may deem appropriate. The Company's benefits, payroll, and other human resource management services are provided through TriNet HR Corporation, a professional employer organization. As a result of Company's arrangement with TriNet, TriNet will be responsible for administrative tasks associated with Employee's employment and benefits.

**4.4    Paid Time Off and Leave** Employee shall be eligible to receive vacation time, sick leave, medical leave (paid and unpaid), holiday time and personal time off in each calendar year in accordance with Company's then-current practices, as may be reflected in an employee handbook or policy manual. This position is exempt under one or more of the "white collar" ex-

**BERGER 0003**

emptions provided in federal or state law, and therefore Employee will not be eligible to receive overtime pay.

**4.5.** **Expenses** Subject to advance written authorization by an officer of Company, Company shall reimburse Employee for all reasonable and necessary expenses incurred in carrying out his/her duties under the Agreement, except that normal travel and living expenses incurred within Employee's city of residence shall be borne by Employee. Employee shall present to Company from time-to-time an itemized statement of account of such expenses, with appropriate receipts, in such form as may be required by Company. You may be issued a corporate credit card and shall sign a separate corporate credit card agreement with the Company which shall set forth the policies and rules of the cards use as well as requirements for managing and tracking the expenses incurred using the corporate credit card as well as an obligations for submitting receipts and documenting expenses for record keeping purposes.

## 5. Employment Termination

Either party may terminate this Agreement at any time, with or without cause or advance notice, for any reason, and no reason need be given for termination, provided that Employee shall give Company at least two (2) weeks prior written notice before resigning such employment. If terminated involuntarily without cause, Employee shall be entitled to all compensation accrued under this Agreement up to the effective date of termination. If employee is terminated for cause, employee will forfeit any accrued but unpaid Qualified Commissions. If employee voluntarily terminates his or her employment with at least one month of prior notice, signs a Company release agreement and Company receives the revenue associated with accrued Qualified Commissions within ninety (90) days after the date upon which Employee gave notice to the Company, employee will receive such accrued Qualified Commissions received during such ninety-day period; otherwise employee forfeits all accrued but unpaid Qualified Commissions. Employee will forfeit any unpaid Qualified Commissions if employee joins a direct or indirect competitor of Company as is determined by Company in its reasonable discretion.

## 6. Non-Disclosure, Noncompetition and Inventions

Reference is made to the Inventions Agreement (as defined in the recitals above). The Inventions Agreement is hereby confirmed as continuing in full force and effect, and the terms and conditions thereof are hereby expressly incorporated by reference herein in their entirety. Employee's employment is contingent on the acknowledgment and acceptance of the Inventions Agreement.

## 7. Company Records and Property; Other Agreements

**7.1 Company Record and Property** Employee agrees that all files, letters, memoranda, reports, records, data, schematics, sketches, drawings, notebooks, program listings, computer programs, databases, products, test equipment, prototypes, computers, mobile devices or other written, photographic, magnetic or other tangible material, whether or not containing Confidential Information or Intellectual Property (as such terms are defined in the Inventions Agreement), and whether created by Employee or others, which shall come into his/her custody or possession (hereinafter collectively referred to as "*Company Records*") shall be, shall continue to be and are

**BERGER 0004**

the exclusive property of Company to be used by Employee only in the performance of his/her duties for Company. Employee shall use diligent efforts to track and record all sales relationships and meetings via Sales Force, or alternative Company CRM, and Employee's employment shall be contingent on the diligent use of the Company's CRM. All such Company Records or copies thereof and all other tangible property of Company in the custody or possession of Employee shall be delivered to Company, upon the earlier of: (i) a request by Company; or (ii) termination of this Agreement. After such request, termination or delivery, Employee agrees not to and shall not retain any such Company Records or copies thereof or abstracts or notes containing any such Proprietary Information, or other tangible property of Company.

**7.2  Other Agreements**  Employee represents that she is not bound by the terms of any agreement with any previous employer or other parties to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of his/her employment with Company or to refrain from competing, directly or indirectly, with the business of such previous employer or any other party that would inhibit her ability to perform his obligations hereunder. Employee further represents that her performance of all the terms of this Agreement and as an employee of Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by him in confidence or in trust prior to her employment with Company.

**7.3  Reasonable Assistance.**  In addition to Employee's obligation to assist the Company to perfect its rights in Intellectual Property, as set forth in Section 3 of the Inventions Agreement, if Employee voluntarily terminates his or her employment, Employee will, at the Company's request, provide reasonable assistance to Company to transfer any unique skills or knowledge in training a replacement, and assist in ongoing litigation matters. Employee and Company will cooperate to find a mutually agreeable time to render such assistance. Employee will not charge the Company for time spent in fulfilling these obligations, but Company will pay or reimburse any reasonable out-of-pocket expenses incurred by Employee while fulfilling these obligations. The provisions of this Section 7.3 will survive the expiration or earlier termination of this Agreement.

**7.4  Company and Affiliates**  The term "Company" used in Section 6 and this Section 7 will be deemed to include any Affiliate of Company, as such term is defined in the Inventions Agreement or any licensor of Intellectual Property to the Company.

**8.  Miscellaneous**

**8.1  Notices**  Any written notice required or permitted to be delivered pursuant to this Agreement will be in writing and will be deemed delivered: (a) upon delivery if delivered in person; (b) three (3) business days after deposit in the United States mail, registered or certified mail, return receipt requested, postage prepaid; (c) upon transmission if sent via telecopier or e-mail, with a written confirmation copy sent via overnight mail; and (d) one (1) business day after deposit with a national overnight courier, in each case to the Company's principal place of business and the address listed above for Employee, as applicable, or to such other address as may be specified upon notice.

**BERGER 0005**

**8.2     Pronouns**  Whenever the context may require, any pronouns used in this Agreement shall include the corresponding masculine, feminine or neuter forms, and the singular forms of nouns and pronouns shall include the plural, and vice versa.

**8.3     Waiver**  No delay or omission by the Company in exercising any right under this Agreement shall operate as a waiver of that or any other right.  A waiver or consent given by the Company on any one occasion shall be effective only in that instance and shall not be construed as a bar or waiver of any right on any other occasion.

**8.4     Captions**  The captions of the sections of this Agreement are for convenience of reference only and in no way define, limit or affect the scope or substance of any section of this Agreement.

**8.5     Severability**  In case any provision of this Agreement shall be invalid, illegal or otherwise unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

**8.6     Employee Certification**  Employee certifies and acknowledges that she has carefully read all of the provisions of this Agreement and that he understands and will fully and faithfully comply with its provisions. Employee represents that she has the legal capacity to execute and perform her obligations under this Agreement and the Inventions Agreement.

**8.7     Acknowledgement of Company Handbook**  Employee acknowledge that Employee's employment is contingent upon reading and accepting the terms and policies in the Kargo employee handbook, incorporated herein by reference.  Kargo reserves the right to change or revise it policies, procedures, and benefits at any time.

**8.8.     Non-Disparagement**  You shall not make, publish or issue any detrimental, derogatory or other critical comments or statements, whether written or oral, concerning the Company, or any of its officers, directors or employees, or their products or services, to any third party including, without limitation, advertisers, their agencies, publishers, Company partners or any trade media whether anonymously, confidentially or otherwise for a period commencing on the Commencement Date and for a period of 24 months following the Termination Date of this Agreement.

**8.9     Required Documentation**  Employee must provide to Company the documents necessary for Company to comply with any government-mandated requirements to verify employment eligibility as determined by the United States Department of Justice for establishing identity and employment eligibility.  Company will not be able to compensate Employee until all necessary documents have been received by Company and verified by Trinet.

**8.10     Amendment**  This Agreement may be amended or modified only by a written instrument duly executed by both the Company and Employee.

**8.11     Successors and Assigns**  This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and assigns, including any corporation

**BERGER 0006**

with which or into which the Company may be merged or which may succeed to its assets or business, provided, however, that the obligations of Employee are personal and shall not be assigned by him/her.

**8.12** **Arbitration** The parties agree that, except as discussed in this Agreement, any controversy, claim or dispute arising out of or relating to this agreement or the breach thereof, or arising out of or relating to the employment of the Employee, or the termination thereof, including any statutory or common law claims under federal, state or local law, including all laws prohibiting discrimination in the workplace, shall be resolved by arbitration before a single arbitrator in New York City, New York, in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association. The parties agree that any award rendered by the arbitrator shall be final and binding, and that judgment upon the award may be entered in any court having jurisdiction thereof. The parties further acknowledge and agree that, due to the nature of the Confidential Information, trade secrets and Intellectual Property belonging to Company to which Employee has or will be given access, and the likelihood of significant harm that Company would suffer in the event that such information was disclosed to third parties, nothing in this paragraph shall preclude Company from seeking injunctive relief to prevent Employee from violating the obligations established in this Agreement or in the Inventions Agreement.

**8.13** **Governing Law; Exclusive Jurisdiction** This Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws principles. Any suit brought relating to this Agreement shall only be brought in the Federal or state courts located in New York County, New York, and the parties agree to exclusive personal jurisdiction in such courts.

**8.14** **Entire Agreement** This Agreement, the Inventions Agreement and the exhibits hereto and thereto constitute the entire agreement between the parties and supersede all prior agreements and understandings, whether written or oral, relating to the subject matter of this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Employment Agreement as of the day and year first set forth above.

COMPANY
Kargo Global, Inc.

EMPLOYEE
Alexis Erin Berger

By: _____

Title: PRESIDENT & CEO

BERGER 0007

EXHIBIT C



Northeast Case Management Center
Heather Santo
Assistant Vice President
950 Warren Avenue
East Providence, RI 02914
Telephone: (866) 293-4053
Fax: (866) 644-0234

July 19, 2016

Seth Rafkin, Esq.
Cooley, LLP
1114 Avenue of the Americas
New York, NY 10036
Via Email to: srafkin@cooley.com

Christopher Turcotte
The Law Office of Christopher B. Turcotte, P.C.
575 Madison Avenue, Suite 1006
New York, NY 10022
Via Email to: cturcotte@cbtlaw.com

Case Number: 01-16-0002-1175

Alexis Berger
-vs-
Kargo Global, Inc.

Dear Parties:

Arbitrator Colombaro's appointment is hereby confirmed.

The Arbitrator is available to conduct the Arbitration Management Conference on the following dates:
July 22, 2016:   From 10:00 AM-3:00 PM    (must be finished by 4:00 PM)
July 25, 2016:   From 10:00 AM-6:00 PM
July 26, 2016:   From 1:00 PM-2:00 PM     (must be finished by 2:00 PM)
                 From 3:30 PM-6:00 PM
July 27, 2016:   From 1:00 PM-3:00 PM
August 1, 2016:  From 10:00 AM-6:00 PM
August 2, 2016:  From 2:00 PM-4:00 PM (must be finished by 4:00 PM)

The parties are requested to advise the undersigned of their availability on or before July 20, 2016.

I look forward to working with you and should there be any questions, please do not hesitate to call.

Thank you,

Elisheva Berlin on behalf of
Michele Gomez
Manager of ADR Services
Direct Dial: (401) 431-4848
Email: MicheleGomez@adr.org

EXHIBIT D

# AMERICAN ARBITRATION ASSOCIATION
## *Employment Tribunal*

---

**In the Matter of Arbitration Between:**

**Alexis Berger**
**(Claimant)**

**-vs-**

**Kargo Global, Inc.**                                    **(Respondent)**

**Case Number: 01-16-0002-1175**

---

### Management Conference Report and Scheduling Order

---

Pursuant to the Employment Arbitration Rules of the American Arbitration Association's (AAA) National Rules for the Resolution of Employment Disputes as amended and in effect November 1, 2009, an Arbitration Management Conference was held on August 1, 2016. Present were Seth Rafkin, Esq. (Cooley, LLP), representing Claimant; Alexis Berger, Claimant; Christopher Turcotte, Esq. (Christopher B. Turcotte, P.C.) and Tracy High, Esq. (S&C's Litigation Group) appearing for Respondent; and Elisheva Berlin on behalf of Michele Gomez, Case Manager, appearing for the AAA.

By Agreement of the parties and direction of the Arbitrator, the following actions were taken and are Ordered:

1. Discovery will be conducted on a tiered basis:
   a. Ten Interrogatories per side are permitted;

b. Thirty document requests per side are permitted;

c. The parties' first requests for Document Production and Interrogatories will be exchanged by **August 12, 2016**;

d. Responses are due by 30 days thereafter for this request and for all requests thereafter, which are not to exceed the permitted limits above and not to exceed completion by **October 28, 2016**.

e. In the event that parties claim a privilege as to any document, counsel shall produce and serve, as part of the document exchange, privilege logs listing the date of the document(s), its author(s), its addressee(s) and copy recipient(s), a description of the contents, and the type of privilege claimed;

f. Eight depositions per side are permitted which must be completed by **October 28, 2016**;

g. The parties will make every attempt to resolve disputed issues before making application to the Arbitrator. If they cannot resolve any discovery dispute, Motion(s) to Compel are to be filed by **November 18, 2016**.

2. Dispositive Motion(s) are to be filed by **November 3, 2016**. The opposing party must respond by **November 17, 2016**.

3. A status conference call will be held on **November 14, 2016**.

4. *In Limine* Motions, if any, shall be made by **November 16, 2016**. Responses are due by **November 23, 2016**. The Arbitrator will rule, with or without oral argument, as she may direct.

5. The parties reserved **November 18, 2016** as the date to attempt to mediate their dispute, should they decide to do so. They are to advise the Case Manager 7-10 days before this date as to whether they, indeed, do wish to attempt Mediation.

6. On **November 17, 2016**, the parties are to simultaneously exchange their lists of witnesses they intend to call and the exhibits they intend to enter at the Evidentiary Hearing.

   a. Witness lists are to include a brief summary of expected testimony for each witness. The summaries shall, specifically, reference any asserted conduct of the parties relevant to the claims or defenses;

   b. Each proposed exhibit shall be pre-marked for identification and sufficient copies brought to the Hearing in a binder for the Arbitrator.

7. The parties shall prepare a Joint Exhibit binder or binders for the Arbitrator, chronologically arranged (unless grouping of documents make it more logical for them to be otherwise arranged), and tabbed for easy reference.

   a. Joint exhibits shall be pre-marked J-1, *et seq.*, with party exhibits marked C-1, *et seq.* and R-1, *et seq.*, respectively. Rebuttal exhibits, not included in the binder, should be held to a minimum.

   b. The binder(s) shall be brought to the Hearing for the Arbitrator.

8. The parties are to submit briefs by **November 22, 2016**.

9. Five days are reserved for the Evidentiary Hearing, which is scheduled for **December 1, 2, 5, 6, 7,** beginning each day at 10:00 a.m. and ending at 5:00 p.m.

   a. The Hearing will be held at the American Arbitration Association's offices located at 120 Broadway, New York, NY 10271.

10. There will be no Court Reporter for the Hearing.

11. Testimony shall be given, under oath, in person, by videoconference, or by other means as directed by the Arbitrator.

12. All substantive issues shall be governed by New York law to be determined by the Arbitrator.

13. Rules of Evidence may be relaxed in this Arbitration in the interest of justice.

14. The Arbitrator will provide a Reasoned Award as required by the AAA Employment Rules.

15. All deadlines, stated herein, will be strictly enforced unless a party has made a good cause request for an extension in which case extensions will be freely given as long as the Hearing dates are not affected.

16. Additional Management Conference calls may be requested by the parties or directed by the Arbitrator as the need may arise.

17. This Order shall continue in effect unless and until it is amended by subsequent order of the Arbitrator.

**Dated: August 1, 2016**                                   **Hon. Billie Colombaro**

                                                            **(Ret.), Arbitrator**

EXHIBIT E

| | |
|---|---|
| **From:** | AAA Michele Gomez <MicheleGomez@adr.org> |
| **Sent:** | Monday, December 19, 2016 3:50 PM |
| **To:** | Seth Rafkin |
| **Cc:** | Chris Turcotte; High, Tracy Richelle; Andersen, Christina; Jennifer Bogue |
| **Subject:** | RE: Berger v. Kargo Global Inc. Stipulated Briefing Schedule |

Good Afternoon:

This will confirm Judge Colombaro has approved the briefing schedule stipulated by the parties.

Regards,

Kristy Allison on behalf of



**AAA Michele Gomez**
**Manager of ADR Services**

American Arbitration Association
Labor, Employment & Elections
T: 401 431 4848  F: 401 435 6529  E: MicheleGomez@adr.org
950 Warren Ave., East Providence, RI 02914-1414
www.adr.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Seth Rafkin [mailto:srafkin@rafkinesq.com]
**Sent:** Friday, December 16, 2016 10:18 AM
**To:** AAA Michele Gomez
**Cc:** Chris Turcotte; High, Tracy Richelle; Andersen, Christina; Jennifer Bogue
**Subject:** Berger v. Kargo Global Inc. Stipulated Briefing Schedule

Good morning Michele,

The parties have conferred on the briefing schedule and have stipulated to the following schedule:

- On or before January 9, 2017:
  - Claimant to submit her brief in support of her claims.
  - Respondent to submit its brief in support of its counter-claims.
- On or before January 30, 2017:
  - Respondent to submit its brief in opposition to Claimant's brief in support of her claims
  - Claimant to submit her brief in opposition to Respondent's brief in support of its counter-claims
- On or before February 13, 2017:
  - Claimant to submit her reply re Respondent's opposition brief re Claimant's claims.
  - Respondent to submit its reply re Claimant's opposition brief re Respondent's counter-claims.

The parties have also agreed that there is not a need for page-limits on the briefs above.

The parties understand that the Arbitrator may wish to schedule time for oral argument after the briefing is submitted.

Please confirm that you will forward the proposed schedule to the Arbitrator and thank you for your assistance.

Thank you


Seth Rafkin
Rafkin Esq. PLLC
1201 Sussex Turnpike, Suite 102
Randolph, New Jersey  07869
973.891.3370
Email: srafkin@rafkinesq.com

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

EXHIBIT F

| | |
|---|---|
| **From:** | AAA Michele Gomez <MicheleGomez@adr.org> |
| **Sent:** | Wednesday, March 15, 2017 11:27 AM |
| **To:** | 'Chris Turcotte'; Seth Rafkin; Jennifer Bogue; 'Andersen, Christina'; 'High, Tracy Richelle' |
| **Subject:** | Oral Argument: Alexis Berger v. Kargo Global, Inc., Case No. 01-16-0002-1175 |

Good Morning:

This will confirm that oral argument has been scheduled for March 29, 2017 at 10:00 a.m. Please connect to the call using the following telephone number and pass code:

Telephone: 888.537.7715
Pass Code: 79587959#

Regards,

Kristy Allison on behalf of



**AAA Michele Gomez**
**Manager of ADR Services**

American Arbitration Association
Labor, Employment & Elections
T: 401 431 4848  F: 401 435 6529  E: MicheleGomez@adr.org
950 Warren Ave., East Providence, RI 02914-1414
www.adr.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

EXHIBIT G

# NYS Department of State

## Division of Corporations

## Entity Information

The information contained in this database is current through June 6, 2017.

Selected Entity Name: KARGO GLOBAL, INC.
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | KARGO GLOBAL, INC. |
| **DOS ID #:** | 2862499 |
| **Initial DOS Filing Date:** | JANUARY 28, 2003 |
| **County:** | NEW YORK |
| **Jurisdiction:** | DELAWARE |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543

**Chief Executive Officer**
HARRY KARGMAN
826 BROADWAY
5TH FLR
NEW YORK, NEW YORK, 10003

**Principal Executive Office**
KARGO GLOBAL, INC.
826 BROADWAY
5TH FLR
NEW YORK, NEW YORK, 10003

**Registered Agent**
CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not recorded and only available by viewing the certificate.

### *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| JAN 28, 2003 | Actual | KARGO GLOBAL, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results    New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us